UNITED STATES COURT DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GARGOYLE GRANITE & MARBLE, INC., <br><br> Plaintiff, <br><br> v. <br><br> OPUSTONE, LLC, dba OPUSTONE STONE TILE CONCEPTS; CH ROBINSON WORLDWIDE, INC.; and UPS GROUND FREIGHT, INC., dba UPS FREIGHT, <br><br> Defendants. | Ct. No. 2:21-cv-00127-MMB <br><br> **OPINION AND ORDER GRANTING MOTION TO SET ASIDE ENTRY OF DEFAULT** |

The sole remaining defendant in this case—UPS Ground Freight, Inc.—moves (ECF 39, motion; ECF 40, supporting brief) to set aside the Clerk's default (ECF 23) entered against it on July 15, 2021.[1] In the interest of avoiding delay, and because the court finds the decisional process would not be significantly aided by oral argument, the court will decide the motion on the record without oral argument. Dist. Idaho Loc. Rule 7.1(d). As discussed more fully below, the court **GRANTS** the motion to set aside the Clerk's entry of default.

## Factual and Procedural Background

The facts are discussed in the court's order granting the other two defendants' motions to dismiss. *See* ECF 29, at 2–5. A shorter version is sufficient

---

[1] UPS also frames its filing as an opposition to Plaintiff Gargoyle's motion for entry of default (ECF 11). The entry of UPS's default effectively granted Gargoyle's motion. To the extent that UPS seeks to oppose the motion for entry of default, therefore, that portion of its argument is **DENIED AS MOOT**.

OPINION AND ORDER GRANTING
MOTION TO SET ASIDE ENTRY OF DEFAULT—1

here. The case arises out of a transaction for the sale and shipment of stone construction materials. Gargoyle bought stone from Opustone for shipment to Idaho. ECF 1, ¶¶ 2, 6. Opustone arranged for CH Robinson to ship the stone to Idaho and put Robinson in touch with Gargoyle to arrange for payment. *Id.* ¶¶ 3, 8. Gargoyle contends it was not offered the option of purchasing additional insurance on the shipment. *Id.* ¶ 10. Robinson contracted to have UPS transport the stone in three boxes for shipment and delivery. *Id.* ¶¶ 11, 14.

At an unknown time and place, the contents of one of the three boxes of stone were "damaged in transit" and, based on photos of the damage, Gargoyle rejected the delivery before actual receipt "as non-conforming as the stone was broken and cracked and entirely unusable." *Id.* ¶ 12. Gargoyle claims Robinson helped it submit a claim of $60,362.79 to UPS for the damaged stone but UPS paid only $4,084.87, citing a limitation of liability clause in its contract with Robinson. *Id.* ¶¶ 13–15. Gargoyle contends it was not a party to the UPS–Robinson contract, was unaware of and did not agree to any limitation of liability, and had no contract with UPS or Robinson. *Id.* ¶ 15.

Gargoyle filed its complaint in March 2021. ECF 1. Gargoyle then filed a process server's executed "declaration of service" establishing proof of service of the summons and complaint on UPS's registered agent in Boise on April 13, 2021. ECF 6. UPS therefore had 21 days from April 13—i.e., until May 4—to file an answer or other responsive pleading. Fed. R. Civ. P. 12(a)(1)(A)(i). UPS

filed nothing and in late June, Gargoyle moved for entry of default based on UPS's failure. ECF 11. Because a party against whom a motion is filed has 21 days to respond to the motion, the Clerk of Court waited until July 15 to enter UPS's default under Rule 55(a). ECF 23.

The other defendants—Opustone and Robinson—moved to dismiss on various grounds and the court granted those motions in late November 2021. ECF 29. The court allowed Gargoyle 28 days' leave to amend and replead Count One of its complaint against Robinson. *Id.* at 43 ¶ 4. In response, Gargoyle filed two documents—a "stipulation of dismissal without prejudice" relating to the claims against Robinson, ECF 30, and a "memorandum of costs and fees" consisting of a declaration of counsel purporting to set forth an amount requested as a default judgment against UPS, ECF 31. The court struck the "stipulation of dismissal" as a legal nullity but granted an extension of time through January 3, 2022, to replead Count One as to Robinson. ECF 32, at 4–5.[2]

The present significance of the claims against Robinson relates to Gargoyle's other filing, the "memorandum of costs and fees." The court construed it as a Rule 55(b) motion for default judgment against UPS, *id.* at 6, and denied it as premature. The court explained that "where a case involves two similarly-situated defendants, a default judgment should not be entered against one

---

[2] The court also stated that "[i]f Gargoyle fails to so replead by that deadline, Count One will be deemed dismissed with prejudice as to Robinson." *Id.* at 5.

defendant until the matter has been adjudicated on the merits as to the other defendant" because of the risk of legally-inconsistent judgments. *Id.* at 7–8 (citing *In re First T.D. & Inv., Inc.*, 253 F.3d 520, 532 (9th Cir. 2001)). The court denied Gargoyle's motion as to Count Four *with prejudice*, finding that a default judgment would have violated the rule against legally-inconsistent judgments because of (1) the court's dismissal of Count Four as to Robinson based on the federal Carmack Amendment's preemption of state law tort claims against "motor carriers" or "freight forwarders" and (2) the complaint's characterization of UPS as falling within those two categories. *Id.* at 10. The court denied Gargoyle's motion *without prejudice* as to Count One, *id.* at 16, and found that even if it had been timely, it failed to provide evidentiary support for the claimed damages and attorney's fees, *id.* at 12–14 & n.6. The court allowed Gargoyle to move anew for default judgment against UPS as to Count One once the claim against Robinson was resolved either via a judgment or by allowing that claim's dismissal with prejudice to take effect. *Id.* at 15.[3]

Gargoyle did not file a renewed motion for default judgment. A few weeks later, UPS moved to set aside the entry of default. Gargoyle opposes. ECF 42.

---

[3] Gargoyle did not file an amended Count One against Robinson. In the interest of clarity for the parties and the appellate record, the court entered a paperless order confirming the dismissal with prejudice effective January 4 and advising that a separate judgment would issue once all claims against all parties were resolved. ECF 34.

OPINION AND ORDER GRANTING
MOTION TO SET ASIDE ENTRY OF DEFAULT—4

## Discussion

### I. Standard for setting aside default

"The court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). "Entry of default" is technical—a plaintiff must merely show, "by affidavit or otherwise," that "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend," upon which showing "the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Setting aside entry of default under Rule 55(c) is simpler than setting aside a default judgment under Rule 60(b)—"in the Rule 55 context there is no interest in the finality of the judgment with which to contend." *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 n.1 (9th Cir. 2010).

Whether to set aside an entry of default is a matter of discretion. *In re Bernal*, 223 B.R. 542, 546 (B.A.P. 9th Cir. 1998). In considering whether a defendant has shown "good cause" for setting aside a default, a district court must consider three factors: (1) whether the moving party engaged in "culpable conduct" that led to the default; (2) whether that party has a "meritorious defense"; or (3) whether setting aside the default would prejudice the plaintiff. *Mesle*, 615 F.3d at 1091. The standard is disjunctive—"a finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the default." *Id.* While the standard "is the same as is used to determine whether

a default judgment should be set aside under Rule 60(b)," *id.*, "relief from entry of default will be granted more readily and with a lesser showing than in a case of a default judgment." *Bernal*, 223 B.R. at 547; *see also id.* (characterizing Rule 55(c) as "more lenient" than Rule 60(b)'s "more stringent standard of 'excusable neglect' for vacating a judgment"). The party seeking to set aside the default has "the burden of demonstrating that these factors favor" doing so. *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001), *overruled on other grounds by Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001).

"[J]udgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits." *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984). Lest there be any doubt about how seriously the Ninth Circuit takes that admonition, *Mesle* quoted it three times, *see* 615 F.3d at 1089, 1091, 1095, and found an abuse of discretion when a district court denied a motion to set aside a default "without demonstrating a proper awareness" of the *Falk* principle. *Id.* at 1095. With that admonition firmly in mind, the court applies the three-factor test to this case.

## II. Culpable conduct

"The usual articulation of the governing standard, oft repeated in our cases, is that a defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer." *TCI*, 244 F.3d at 697 (cleaned up; emphasis in original). In this context,

"intentional" means "something more like, in the words of a . . . Second Circuit opinion addressing the same issue, 'willful, deliberate, or evidence of bad faith.'" *Id.* (quoting *Am. All. Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996)).

> Neglectful failure to answer as to which the defendant offers a credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process is not "intentional" under our default cases, and is therefore not *necessarily*—although it certainly may be, once the equitable factors are considered—culpable or inexcusable.

*Id.* at 697–98 (emphasis in original). As an example of conduct that was not "culpable," the court cited a case in which an attorney left the country for a family emergency, missed a deadline for answering a motion for summary judgment while he was away, failed to seek an extension despite knowing the due date would fall during his absence, and failed to contact the district court or opposing counsel until 16 days after his return "because it took that long for him to recover from his trip and sort through his mail." *Id.* at 698 (discussing *Bateman v. U.S. Postal Serv.*, 321 F.3d 1220, 1225, 1223 (9th Cir. 2000)). The court found counsel's actions "weak" but not in bad faith and held that because he "acted in good faith, without prejudice to the opposing party, and with minimal delay or impact on the judicial proceedings, his neglect was excusable." *Id.* (citing *Bateman*, 321 F.3d at 1225). Similarly, the *Falk* court found the defaulted defendant had not acted culpably when she failed to appear at a

OPINION AND ORDER GRANTING
MOTION TO SET ASIDE ENTRY OF DEFAULT—7

hearing because she was leaving on a trip to Korea the next day, did not return for two months, and then experienced difficulty hiring counsel. 739 F.2d at 464.

"On a Rule 60(b) motion [to vacate a default judgment], this court will accept the allegations of the movant's factual statement." *Id.* In the less-strict Rule 55(c) posture, therefore, this court will do likewise. UPS's motion to set aside the entry of default includes a declaration from Tom McLaughlin, the Director of Risk Management and Claims for nonparty TFI International, formerly known as UPS Freight, Inc. *See* ECF 40-1. McLaughlin explains that when Gargoyle filed this lawsuit, TFI was in the process of acquiring UPS Freight, including its existing cargo litigation. *Id.* ¶¶ 16–17. He states that TFI understood UPS Freight's internal process as requiring UPS Freight, upon learning of litigation against it by any means, to advise the UPS Legal Department of the matter; they in turn would assign counsel to handle the matter. *Id.* ¶ 18. McLaughlin states that Gargoyle served UPS Freight before the TFI transaction closed and, consistent with standard practice, UPS Freight forwarded the matter to the UPS Legal Department. *Id.* ¶¶ 19–20.

McLaughlin explains the UPS Legal Department assigned this case a matter number, and in turn UPS Freight represented to TFI that the UPS Legal Department would assign counsel to handle the matter, but apparently

that never happened.[4] *Id.* ¶¶ 21, 22, 24. TFI relied on UPS Freight's representation and did not learn it was undefended until Gargoyle filed its (so-construed) motion for default judgment in December 2021. *Id.* ¶¶ 23, 25.[5] The TFI/UPS Freight transaction closed on May 1, 2021, and McLaughlin states that "[h]ad UPS Freight not represented to TFI that the UPS Legal Department was litigating the matter on its behalf, TFI would have timely answered Gargoyle's complaint against UPS Freight." *Id.* ¶¶ 26–27.

Gargoyle contends that "when a sophisticated international business is in the process of an acquisition, its failure to have proper procedures in place to make sure its business affairs are handled during the acquisition period is culpable conduct which should prevent it from having the default set aside." ECF 41, at 8–9. It further contends that "the conduct of UPS in misrepresenting to its purchaser that it was responding to this lawsuit, when it was not, is also culpable conduct that precludes setting aside the default, and TFI should be bound by the conduct of UPS, the entity it was purchasing." *Id.* at 9.

Gargoyle cites no evidence of what UPS represented (or misrepresented) to TFI and cites no case law in support of either of its arguments. That said, its theory about a "sophisticated international business" needing to implement

---

[4] The UPS Legal Department was a separate UPS division not part of the TFI acquisition. *Id.* ¶¶ 18(a), 20.

[5] McLaughlin does not explain how or why UPS learned of the December filing.

proper procedures has some logic. "Absent some explanation . . . , it is fair to expect that individuals who have previously been involved in litigation or have consulted with a lawyer appreciate the consequences of failing to answer and do so only if they see some advantage to themselves." *TCI*, 244 F.3d at 699 n.6. While surely that principle applies to corporations, it comes with a significant caveat: "We have not held, however, nor do we hold here, that legal sophistication or lack thereof is determinative of whether the culpability standard is met." *Id. But see Mesle*, 615 F.3d at 1093 ("When considering a legally sophisticated party's culpability in a default, an understanding of the consequences of its actions may be assumed, and with it, intentionality.").

This court has noted the disconnect between *TCI*'s admonition that legal sophistication is not determinative and *Mesle*'s statement that intentionality may be assumed as to a legally sophisticated party and has resolved the issue "in keeping with the policy to decide cases on their merits." *Garner v. Wells Fargo Home Mortg., Inc.*, No. 1:10-cv-266-BLW, 2011 WL 2413841, at *3 (D. Idaho June 9, 2011). The court found that while Wells Fargo's counsel should have known of the consequences of failing to timely answer, the "failure to answer resulted from mere negligence or inadvertence, rather than an attempt to manipulate the legal process or take advantage of Plaintiff." *Id.* (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.*, 507 U.S. 380, 394–95 (1993)).

So too here. Gargoyle does not discuss any case law and does not address the Ninth Circuit's admonition that "culpable conduct" requires something "willful, deliberate, or evidence of bad faith." *TCI*, 244 F.3d at 697. The *Mesle* court found that a district court erred by failing to discuss the requirement that judgment by default "is a drastic step appropriate only in extreme circumstances" and termed that failure "no minor omission" because it "fundamentally altered the standard, turning the court's attention to everyday oversights rather than to whether there were any extreme circumstances. Absent such circumstances, judgment by default is inappropriate . . . ." 615 F.3d at 1091–92. The court can find nothing in the record here showing that UPS's conduct was nefarious or indicative of "extreme circumstances." It was sloppy, and TFI might have acted promptly after the acquisition closed to check on the status of pending cases. But it beggars belief to contend that UPS acted "to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process," *id.* at 697–98, and it is striking that not even Gargoyle contends that UPS so acted.

### III. Meritorious defense

The second question is whether the defaulted defendant has shown a "meritorious defense." Making such a showing does not impose an "extraordinarily heavy" burden—"[r]ather, the defendant satisfies the meritorious defense requirement if it alleges sufficient facts that, if true, would constitute a

defense." *Lakeview Cheese Co. v. Nelson-Ricks Creamery Co.*, 296 F.R.D. 649, 654 (D. Idaho 2013) (citing *Mesle*, 615 F.3d at 1094). The "meritorious defense" burden is therefore "minimal." *Mesle*, 615 F.3d at 1094.[6]

The sole claim left here is Gargoyle's Carmack Amendment claim against UPS. UPS contends it has a meritorious defense because its liability was contractually limited to 50¢ per pound, ECF 40, at 12 (citing ECF 40-1, ¶ 14), and cites case law it characterizes as holding that a freight broker, such as Robinson, "can agree to liability limitations with the carrier that are binding upon the broker's customer." *Id.* at 9 (citing, *inter alia*, *Norfolk S. Ry. Co. v. Kirby*, 543 U.S. 14, 33 (2004) ("When an intermediary contracts with a carrier to transport goods, the cargo owner's recovery against the carrier is limited by the liability limitation to which the intermediary and carrier agreed.")).[7]

Alternatively, UPS contends it has a second meritorious defense—accord and satisfaction—because it tendered $4,084.87 to Gargoyle or its representative and the check was endorsed and cashed. *Id.* at 12–13 (citing *AXA S.A. v. Union Pac. R.R. Co.*, 269 F. Supp. 2d 863, 866 (S.D. Tex. 2003)). The *AXA* court found accord and satisfaction to be a defense to a Carmack Amendment claim

---

[6] The court does not decide whether the defendant's allegations are true, as that is a matter to be determined via the litigation process. *Id.*

[7] The *Kirby* Court cited precedent holding that a transfer company—here, analogous to Robinson—could validly limit a shipping railroad's liability to less than the true value of the goods even without the owner's express authority. *See id.* (discussing *Great N. Ry. Co. v. O'Connor*, 232 U.S. 508, 514 (1914)).

OPINION AND ORDER GRANTING
MOTION TO SET ASIDE ENTRY OF DEFAULT—12

because it is "a means of compromising a claimed liability." 269 F. Supp. 2d at 865 (quoting *Callen v. Pa. R.R. Co.*, 332 U.S. 625, 631 (1948)).

Gargoyle responds that "[w]hile it may be true that limitations of liability under the Carmack Amendment are permitted, they are not favored, and are a very narrow exception to the general rule of strict liability . . . ." ECF 41, at 6. Gargoyle contends that because limitations of liability are disfavored, UPS lacks a meritorious defense. *Id.* at 7–8. But Gargoyle unintentionally admits that UPS's defense is "meritorious" *for setting aside a default*. A "disfavored" defense is a valid defense because, in considering whether to set aside a default, the court does not decide the merits, much less who will prevail.

Gargoyle also does not address the accord and satisfaction defense and has waived any objection it might have had to whether that defense is "meritorious." For that reason, the court would find UPS has a meritorious defense even if it accepted Gargoyle's theory as to limitation of liability.

## IV. Prejudice to Gargoyle

The final question is whether setting aside the default would prejudice the plaintiff and asks "whether his ability to pursue his claim will be hindered." *Falk*, 739 F.2d at 463. "To be prejudicial, the setting aside . . . must result in greater harm than simply delaying resolution of the case or being forced to litigate on the merits." *Lakeview Cheese*, 296 F.R.D. at 654 (cleaned up).

> It should be obvious why merely being forced to litigate on the merits cannot be prejudicial for purposes of lifting a default judgment. For had there been no default, the plaintiff would of course have had to litigate the merits of the case, incurring the costs of doing so. A default judgment gives the plaintiff something of a windfall by sparing her from litigating the merits of her claim because of her opponent's failure to respond; vacating the default judgment merely restores the parties to an even footing in the litigation.

*TCI*, 244 F.3d at 691. Here, because the court has not entered a default judgment, Gargoyle "would be required to proceed to hearing in any event to establish its claims and the amount of damages before it could obtain a default judgment." *Id.* (citing Fed. R. Civ. P. 55(b)(2)); *see also* ECF 32, at 12–14 (noting that Gargoyle's (so-construed) motion lacked legal and evidentiary support).

Indeed, even though it is almost a year old, this case has not progressed beyond its initial stages. Gargoyle filed the complaint and served the defendants, two of them filed Rule 12(b) motions and the court granted those motions after full briefing, and the only presently remaining matter is UPS's motion to set aside the entry of default. Gargoyle has not only not yet obtained a default judgment against UPS, Gargoyle has also not filed a new motion for a default judgment supported by evidence. No party has served Rule 26 initial disclosures and the parties have not, to the court's knowledge, held a Rule 26(f) discovery conference (much less propounded formal discovery).

Gargoyle asserts it will be prejudiced if the court sets aside the default "because Gargoyle is now unable to proceed against either Opustone or CH

Case 2:21-cv-00127-MMB Document 43 Filed 02/24/22 Page 15 of 16

Robinson, and it appears that UPS's defense now is that it limited its liability through its contracts with CH Robinson and/or Opustone." ECF 41, at 4. Gargoyle contends that if the other defendants had remained in the case, "the issue of the limitation of liability alleged by UPS could have been investigated" and Gargoyle might have been able to amend its complaint "to seek the difference between what was paid by UPS and the damage caused." *Id.*

That argument, however, is a non sequitur. It assumes that, had UPS timely appeared and avoided default, the outcome of the motions to dismiss filed by Opustone and Robinson would have been different. But Gargoyle offers no argument to support that theory, and the court can see no reason to accept it. The complaint's allegations would have been the same regardless of UPS's (non-)appearance, so presumably the outcome of the Rule 12(b) motions would likewise have been the same.

* * *

OPINION AND ORDER GRANTING
MOTION TO SET ASIDE ENTRY OF DEFAULT—15

## Conclusion

For the reasons stated above, it is hereby **ORDERED** as follows:

1. UPS's motion (ECF 39) to set aside the Clerk's entry of default (ECF 23) dated July 15, 2021, is **GRANTED**.

2. Consistent with Rule 12(a)(1)(A)(i), UPS has 21 days from the date of this order to file and serve an answer or other pleading.

3. To the extent that UPS opposes Gargoyle's motion for entry of default (ECF 11), that portion of UPS's argument is **DENIED AS MOOT**.

Dated: February 24, 2022

/s/ *M. Miller Baker*
M. Miller Baker, Judge[8]

---

[8] Judge of the United States Court of International Trade, sitting by designation.